IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | |
| MARVIN R. ARENSDORF, ) | |
| ) | CASE NO. BK07-41844-TLS |
| Debtor(s). ) | A08-4049-TLS |
| PHILIP M. KELLY, Chapter 7 Trustee, ) | |
| ) | |
| Plaintiff, ) | CH. 7 |
| and ) | |
| ) | |
| MARVIN ARENSDORF, ) | |
| ) | |
| Intervenor-Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| REC, INC.; M. DEAN KURTH; ) | |
| CHERYL KURTH; and BETTY KURTH, ) | |
| ) | |
| Defendants. ) | |

ORDER

    This matter is before the court on the joint motion for partial summary judgment filed by the Chapter 7 trustee on behalf of the debtor as shareholder of REC, Inc., and on behalf of REC, Inc., on its derivative claim (Fil. #63) and the intervenor-debtor's motion for partial summary judgment and joinder in the trustee's motion (Fil. #101), and on the resistance to both motions by defendants M. Dean Kurth, Cheryl Kurth, and Betty Kurth (Fil. #103). Philip M. Kelly represents himself as trustee, Timothy P. Brouillette represents the Kurth defendants, and James C. Bocott represents the intervenor-debtor. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

    In 1996, Marvin Arensdorf and M. Dean Kurth formed REC, Inc., to purchase a recycling business in North Platte, Nebraska. Ostensibly, they each held 50 percent of the corporate stock. Mr. Arensdorf filed a Chapter 7 bankruptcy petition on October 1, 2007, and Mr. Kelly was appointed as trustee for the case. In November 2007, Mr. Kurth arranged to purchase the debtor's shares of REC stock for $26,000. Three days prior to purchasing the debtor's stock, Mr. Kurth entered into an agreement to sell the business to a third party for $380,000. This specific information was not disclosed to the debtor, nor was the trustee aware of any part of the transaction. The trustee alleges that Mr. Kurth breached his fiduciary duty to the corporation and to Mr. Arensdorf, and by his actions lessened the value of the bankruptcy estate. The trustee seeks to avoid the transfer of Mr. Arensdorf's stock interest and to recover assets for the benefit of the estate.

Mr. Kurth testified in discovery that Mr. Arensdorf had not been involved in the business since early in its inception. Mr. Kurth operated the business thereafter. When Mr. Kurth approached him in June 2007 about wanting to sell the business, Mr. Arensdorf allegedly asked only to be repaid his initial investment of $25,000 or $26,000.

On a previous motion in this case, summary judgment was granted to the trustee, avoiding the purported sale of the debtor's stock in REC, Inc., and returning the parties to the positions they were in immediately prior to the transfer. *See* the order of Jan. 8, 2009 (Fil. #39). Mr. Arensdorf then intervened and filed a cross-complaint against REC, Inc., and the Kurths, alleging that Mr. Kurth breached a fiduciary duty and a duty of loyalty to Mr. Arensdorf, converted assets belonging to Mr. Arensdorf, and committed fraud by intentionally misrepresenting the reason for Mr. Kurth's interest in purchasing Mr. Arensdorf's shares of REC. The Kurths respond that Mr. Arensdorf would be unjustly enriched if he were allowed to recover a larger proportion of the sale proceeds. Mr. Kurth further asserts, against the trustee and the debtor, that he is entitled to contribution from them for deferred compensation for his years of unpaid service to the company. The trustee subsequently filed a derivative counterclaim[1] on behalf of the corporation alleging that Mr. Kurth acted fraudulently and in violation of state law and his fiduciary duties by paying himself $393,220.51 from corporate assets in January 2008.

The trustee now moves for partial summary judgment and requests a judgment in favor of the corporation on the derivative counterclaim for $393,220,51 plus interest, or, alternatively, judgment in favor of the trustee on the complaint for $196,610.25 plus interest, representing Mr. Arensdorf's one-half interest in REC, Inc.'s outstanding shares of stock. The trustee makes clear that he is not opposed to the sale of the business. He simply is attempting to recover Mr. Arensdorf's portion of the proceeds for the bankruptcy estate.

Mr. Arensdorf, as intervenor, also moves for summary judgment, requesting a finding that he owns 50 percent of REC, Inc.'s stock, his ownership interest is worth at least $196,610.25, the trustee is entitled to recover that amount, plus interest, from Mr. Kurth on behalf of the bankruptcy estate, and any portion of that recovery remaining after payment of allowed claims, trustee fees, and attorneys' fees and costs should be paid to the debtor.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). An issue is

---

[1]When the order was entered voiding the sale of Mr. Arensdorf's stock, the trustee made demand upon REC, Inc., to take action to recover the money from the Kurths. After waiting the statutory 90-day period, Mr. Kelly commenced the derivative action pursuant to Neb. Rev. Stat. § 21-2072 within this adversary proceeding. The derivative action is an asset of Mr. Arensdorf's bankruptcy estate, so the trustee has standing to assert it in the process of collecting and reducing to money the assets of the estate. 11 U.S.C. § 704(a)(1).

genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Blocker v. Patch (In re Patch)*, 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. *Hitt v. Harsco Corp.*, 356 F.3d 920, 923-34 (8th Cir. 2004).

The following facts either have been established by the evidence or are not in dispute for purposes of this motion:

1. The plaintiff, Philip M. Kelly, is the Chapter 7 trustee for the bankruptcy estate of Marvin Ralph Arensdorf.

2. In June 1996, M. Dean Kurth and Marvin Arensdorf formed a corporation named REC, Inc., to purchase and operate a regional recycling center in North Platte, Nebraska.

3. Mr. Arensdorf was an accountant and was familiar with the books of the recycling center under its previous owners. When the business came up for sale, he encouraged Mr. Kurth, who holds an MBA and worked at the time as a business consultant, to purchase the business with him.

4. The corporate records of REC, Inc., list both Mr. Kurth and Mr. Arensdorf as incorporators. At the first meeting of incorporators on June 27, 1996, stock subscriptions for 100 shares to each were accepted and both men were elected to the board of directors for REC, Inc.

5. The corporate records of REC, Inc., show Stock Certificate No. 1 dated June 27, 1996, for 100 shares to Mr. Kurth, which was signed by him, and Stock Certificate No. 2 dated June 27, 1996, for 100 shares to Mr. Arensdorf, which was unsigned.

6. Both Mr. Kurth and Mr. Arensdorf signed consents and waivers of notice of the first meeting of shareholders.

7. Both Mr. Kurth and Mr. Arensdorf, as directors, signed consents and waivers of notice of the first meeting of the board of directors on June 27, 1996.

8. At the first meeting of the board of directors, Mr. Kurth was elected president and secretary, and Mr. Arensdorf was elected vice-president and treasurer.

9. On July 1, 1996, REC, Inc., and co-signors Mr. Kurth and Mr. Arensdorf borrowed $250,000.00 from Adams Bank & Trust. The note further identifies deeds of trust on the homes of both Mr. Kurth and Mr. Arensdorf.

10. REC, Inc., later took out a loan to obtain the release of Adams Bank & Trust's security interest in Mr. Arensdorf's house.

11. In July 1996, REC, Inc., purchased real estate for the business, *i.e.*, Lots 1 and 2, Wood-Simon Subdivision, North Platte, Lincoln County, Nebraska.

12. On April 23, 2001, July 7, 2003, and January 26, 2004, REC, Inc., and co-signors Mr. Kurth and Mr. Arensdorf borrowed additional sums from Adams State Bank, as evidenced by promissory notes in the amounts of $10,050.00 (Note dated 4/23/01), $91,989.50 (Note dated 7/7/2003), and $35,050.00 (Note dated 1/26/2004). Each note contains the signatures of Mr. Kurth and Mr. Arensdorf, and identifies Mr. Arensdorf as vice-president/secretary on the July 7, 2003, note and the January 26, 2004, note.

13. The corporation elected to be a subchapter S corporation for tax purposes.

14. A separate Schedule K-1 ("Shareholder's Share of Income, Credits, Deductions, etc.") for each shareholder was filed as part of the annual corporate tax return. Mr. Kurth and Mr. Arensdorf were each assigned half of the year's income or loss from the business.

15. After the first several months of REC's ownership of the business, Mr. Arensdorf spent very little time at or involved in the business. Mr. Kurth was responsible for the day-to-day operations.

16. Mr. Kurth's wife, Cheryl Kurth, also worked at the recycling center.

17. Mr. and Mrs. Kurth loaned additional funds in the business over the years.

18. Defendant Betty Kurth is Mr. Kurth's mother, who loaned Mr. Kurth money to put into the business.

19. The bylaws of REC, Inc., required annual meetings of shareholders to be held on the third Thursday of March of each year, and that the majority of outstanding shares entitled to vote would constitute a quorum at the meeting of shareholders. The bylaws further require that the board of directors consist of two directors, and that the number of directors fixed by the bylaws shall constitute a quorum for the transaction of any business. The date of annual meetings of the board of directors was set as immediately following the adjournment of the annual meeting of shareholders. The bylaws further provided at Article II, Directors, as follows:

> Section 9, Action Without a Meeting. Any action required to be taken at a meeting of the Board of Directors, or any committee, may be taken without a meeting, if a consent in writing, setting forth the action so taken, shall be signed by

    all of the directors, or all of the members of the committee, as the case may be. Such consent shall have the same effect as a unanimous vote. The consent may be executed by the directors in counterparts.

20. After the initial minutes of the shareholders dated June 27, 1996, the corporate records of REC, Inc., do not include any minutes of shareholders meetings or waivers of notices by shareholders.

21. The records of REC, Inc., after 1996 reflect only the board minutes of January 1, 2004; June 1, 2007; and October 1, 2007.

22. The board of directors' minutes of January 1, 2004, state that Cheryl L. Kurth was appointed to the board of directors and appointed as treasurer. This unsigned document states that Mr. Arensdorf was removed from the board of directors and as vice-president.

23. The board of directors' minutes of October 1, 2007, state that an offer of $380,000.00 for asset acquisition was received and the decision was made to develop and finalize a purchase contract. No minutes of a shareholders' meeting or consents by the shareholders exist.

24. In June 2007, Mr. Kurth approached Mr. Arensdorf about selling the recycling center.

25. On October 1, 2007, Mr. Arensdorf filed for relief under Chapter 7 of the U.S. Bankruptcy Code.

26. Mr. Kurth and Mr. Arensdorf subsequently executed a purchase agreement dated November 24, 2007, and signed by Mr. Kurth on January 14, 2008, by which the parties agreed to sell Mr. Arensdorf's shares and ownership interest in REC, Inc., to Mr. Kurth for $26,000. That amount represented the repayment of the principal amount of loans made to the company by Mr. Arensdorf.

27. On January 2, 2008, substantially all of the assets of REC, Inc., were sold to Borges Enterprises, L.L.C., and at closing a check was issued to REC, Inc., in the amount of $338,220.51. This represented the contract sales price of $380,000 less a mortgage payoff, payment of property taxes, and various costs of sale.

28. REC, Inc., retained a pickup truck, several inoperable trucks, and approximately $26,000 in the corporate checking account, which balance equals the amount of the check to Mr. Arensdorf, currently held by the Chapter 7 bankruptcy trustee.

29. On January 8, 2008, Mr. Kurth withdrew $338,220.51 from the corporate checking account and deposited it into his personal checking account. Mr. Arensdorf was unaware of this withdrawal.

      30.    On January 10, 2008, Mr. Kurth withdrew $55,000 from the corporate checking account and deposited it into his personal checking account. Mr. Arensdorf was unaware of this withdrawal.

The Kurths contend that the withdrawals were appropriate and were made to repay them for their loans to the company and for their years of uncompensated service to the business.

The available evidence consists largely of the deposition and affidavits of Mr. Kurth, and the deposition of Mrs. Arensdorf. Mr. Arensdorf's health issues render him unable to share with the court his understanding of the business arrangement.

With regard to the trustee's allegations that Mr. Kurth breached his fiduciary duties to the corporation and to Mr. Arensdorf, Nebraska law is clear that an officer or director of a corporation occupies a fiduciary relation toward the corporation and its shareholders and must comply with his fiduciary duties in dealings with the corporation and its shareholders. *Jardine v. McVey*, 759 N.W.2d 690, 694-95 (Neb. 2009); *Trieweiler v. Sears*, 689 N.W.2d 807, 830-31 (Neb. 2004). The claims on behalf of Mr. Arensdorf and REC, Inc., hinge on whether or not he was a shareholder. *Id.*

A shareholder is a "person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." Business Corporation Act, Neb. Rev. Stat. § 21-2014(20). Absent a valid stock certificate, some sort of subscription or contract, express or implied, is required, whereby the person obtains the right to (1) hold stock or, upon some condition, demand stock; and (2) exercise the rights of a stockholder. *Jardine*, 759 N.W.2d at 695 (quoting 18A Am. Jur. 2d *Corporations* § 614 at 450 (2004)). Shareholders who participate and acquiesce in the manner in which stock is issued to a shareholder who gives no value for it are not in a position to later dispute the shareholder's status. *Evans ex rel. D & E Copiers, Inc. v. Engelhardt*, 518 N.W.2d 648, 651 (Neb. 1994). Recognition as a shareholder by the other corporate shareholders, distributions based on percentage of stock ownership, and identification as a shareholder on corporate tax returns, including schedule K-1s, are all factors that indicate shareholder status. *Jardine*, 759 N.W.2d at 695-96 (quoting *Evans*, *supra*).

Under the circumstances of the case at bar, Mr. Arensdorf was a shareholder of REC, Inc. Throughout their ownership of the recycling center, Mr. Kurth treated Mr. Arensdorf as a shareholder and allocated 50 percent of the business's operating profits and losses to him. Because of the manner in which the management responsibilities came to be divided between the parties, Mr. Kurth evidently regarded Mr. Arensdorf as essentially a silent partner. Nevertheless, Mr. Kurth owed a duty to him as a shareholder, and to the corporation, to act in good faith and in the best interests of the corporation. Moreover, Mr. Kurth freely admits he did not tell Mr. Arensdorf the details of the Borges's offer to purchase the company or propose to pay Mr. Arensdorf more than the $26,000 he allegedly requested. This may have been because Mr. Arensdorf was not interested in the disposition of the company. Regardless, it was a breach of Mr. Kurth's fiduciary duty.

Upon such a breach, the "director who votes for or assents to a distribution made in violation of [the Business Corporation Act's section on distributions to shareholders] or the articles of

incorporation shall be personally liable to the corporation" for the unlawful distributions. Neb. Rev. Stat. § 21-2096(1). Simply ordering Mr. Kurth to turn over to the bankruptcy trustee an amount representing half of the net proceeds of the sale of the corporation, however, fails to account for some of the legitimate corporate ledger-balancing Mr. Kurth was attempting to do. Wages and salaries owed and repayment of borrowed monies are categories of legitimate business expenditures to be settled before distribution is made to shareholders. Therefore, any order to turn over funds at this juncture would be premature until an accounting can be performed.

IT IS ORDERED:

1. The joint motion for partial summary judgment filed by the Chapter 7 trustee on behalf of the debtor as shareholder of REC, Inc., and on behalf of REC, Inc., on its derivative claim (Fil. #63) is denied.

2. The intervenor-debtor's motion for partial summary judgment and joinder in the trustee's motion (Fil. #101) is granted to the extent of a finding that the debtor is the owner of 50 percent of the stock of REC, Inc. The motion is denied in all other respects.

3. The clerk shall schedule a pretrial conference in this matter.

DATED: September 15, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *Philip M. Kelly
    Timothy P. Brouillette
    *James C. Bocott
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.